1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY JOHNSON,<br><br>          Plaintiff,<br><br>     v.<br><br>L. GONZALEZ, et al.,<br><br>          Defendants. | Case No.: 1:09-cv-01264-AWI-BAM PC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 99, 100, 110.) |

**I.     Procedural Background**

Plaintiff Anthony Johnson ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's complaint, filed on July 21, 2009, against Defendants L. Gonzales[1] and A. Murrieta for excessive force in violation of the Eighth Amendment.

Following remand from the Ninth Circuit Court of Appeals, Defendants filed a motion for summary judgment on November 15, 2013.[2]  (ECF No. 99.) On December 5, 2013, Plaintiff filed a

---

[1]     Defendant was sued as "L. Gonzalez."

[2]     Concurrent with the motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. (ECF No. 99-6); see Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1988); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

1

motion for summary judgment. Plaintiff's moving papers appeared to be an opposition, rather than a cross-motion for summary judgment. (ECF No. 100.)

On June 11, 2014, the Court granted Plaintiff's request to file an amended opposition to Defendants' motion for summary judgment. (ECF No. 108.)

On June 27, 2014, Plaintiff filed an opposition to the motion for summary judgment. He also filed a notice and motion for summary judgment. (ECF Nos. 109, 110.) The Court construes Plaintiff's papers as an opposition to Defendants' motion for summary judgment.

Defendants did not file a reply and the motion is deemed submitted. Local Rule 230(l).

## I.   Defendants' Motion for Summary Judgment

### A.  Legal Standard for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a) summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). However, the court is to liberally construe the filings and motions of pro se litigants. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (internal quotations and citations omitted).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

1  support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c); <u>Matsushita</u>, 475 U.S. at 586
2  n.11.
3      In arriving at this order, the Court carefully reviewed and considered all arguments, points and
4  authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any,
5  objections, and other papers filed by the parties.  Omission of reference to an argument, document,
6  paper, or objection is not to be construed to the effect that this Court did not consider the argument,
7  document, paper, or objection.  This Court thoroughly reviewed and considered the evidence it
8  deemed admissible, material, and appropriate.

### B. Summary of Relevant Allegations

On June 9, 2008, Defendants Gonzales and Murrieta were escorting Plaintiff back to his cell from the law library.  (ECF No. 1, ¶¶ 7, 13.)  Defendants were trying to engage Plaintiff in conversation, making threats, and using profanity.  (ECF No. 1, ¶ 13.)  Defendant Gonzales began pulling on Plaintiff's left arm, telling him to speed up and walk faster.  (ECF No. 1, ¶¶ 15, 16.)  Plaintiff's hands were handcuffed behind his back and he was holding his legal mail.  Plaintiff responded that he could not go any faster and that he was losing his grip on the envelope he was holding because Defendant Gonzales was pulling on his arm.  (ECF No. 1, ¶ 15.)  Defendant Gonzales slammed Plaintiff to the ground with enough force that "Plaintiffs head was busted."  (ECF No. 1, ¶ 17.)  Plaintiff was struck by Defendants Gonzales and Murrieta numerous times before losing consciousness.  (ECF No. 1, ¶ 18.)  When Plaintiff regained consciousness, Correctional Officers Beltran and Blevins escorted him to the medical clinic for treatment.  (ECF No. 1, ¶ 20.)

### C. Defendants' Statement of Facts in Support of Their Motion (ECF No. 99-2)

1. Plaintiff is an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR").

2. Plaintiff was housed at California State Prison, Corcoran ("CSP-Corcoran") in the Security Housing Unit ("SHU") at the time of the events at issue.

3. In June 2008, Defendants Gonzales and Murrieta worked as search and escort officers in CSP-Corcoran's SHU.

4. Search and escort officers escorted inmates housed in the SHU to and from their cells.

5. Escorts were generally performed by two officers.

6. The standard procedure, under such circumstances, was for one officer to walk on either side of the inmate.

7. The practice was for the officers to stay within arms-length of the inmate, with at least one officer keeping his hands on the inmate's arms at all times.

8. During the escort, the inmate was required to remain facing forward.

9. From that position, the inmate posed the least risk of harm to the escorting officers.

10. These security measures were necessary because the SHU was used to house inmates whose conduct in prison had been found to endanger the safety of others or the security of the institution.

11. On June 9, 2008, Defendants Gonzales and Murrieta were escorting Plaintiff back to his housing unit from the law library.

12. Defendant Gonzales was positioned on Plaintiff's left and Defendant Murrieta was positioned on his right.

13. Plaintiff's hands were cuffed behind his back.

14. Defendant Gonzales was holding Plaintiff's left forearm with his right hand.

15. During the escort, Plaintiff turned his head and shoulder toward Defendant Murrieta and said, in an apparent reference to Defendant Gonzales, "Hey cuz, he keeps grabbing my arm" and "You're going to have to take me down."

16. In response, Defendant Gonzales ordered Plaintiff to face forward and not to turn his shoulder.

17. Plaintiff turned towards Defendant Gonzales, twisting his upper body as if he was trying to break the grip Defendant Gonzales had on his left forearm.

18. Plaintiff then stepped up to Defendant Gonzales and hit Defendant Gonzales' chest with his own chest.

19. As Plaintiff was moving towards him, Officer Gonzales turned to his left and tried to use Plaintiff's momentum to put him on the ground.

4

20. As he did so, Defendant Gonzales slipped on the gravel underneath, and the two men went down to the ground.

21. Once Plaintiff and Defendant Gonzales were on the ground, Plaintiff continued to resist by jerking his upper body and kicking his legs.

22. Plaintiff was face down at the time.

23. Defendant Gonzales kept control of Plaintiff's upper body by placing his left hand on Plaintiff's left shoulder, and his right hand on Plaintiff's back, until responding staff arrived.

24. For his part, Murrieta tried to maintain control of Plaintiff's lower body by placing his knee on the back of Plaintiff's legs.

25. Once responding staff arrived, they took over for Defendants Gonzales and Murrieta.

26. After being relieved, Defendant Gonzales went to the medical clinic and was seen for scrapes on his left wrist, fingers, and arm, and also on his right arm.

27. After the incident, Plaintiff was seen by medical staff and found to have abrasions/scratches on his right forehead, right cheek, and on the front of both knees.

28. Medical staff cleared Plaintiff to go back to his building.

29. Based on the events of June 9, 2008, Plaintiff was charged with "Battery on a Peace Officer and issued a Rules Violation Report.

30. At the disciplinary hearing, Plaintiff was found guilty of the charge.

31. Plaintiff also was assessed 150 days' loss of good time credits.

32. The hearing officer's guilty finding was based, in part, on: (1) Defendant Gonzales' written report documenting that after Defendant Gonzales ordered Plaintiff to face forward and not to turn his shoulder, Plaintiff stepped towards Defendant Gonzales and hit Gonzales' chest with his chest; and (2) the investigative report prepared by Correctional Officer Heatherly, which also documented that Plaintiff turned towards Defendant Gonzales and bumped Defendant Gonzales with his chest.

**D. Discussion**

Defendants move for summary judgment on the grounds that (1) Plaintiff's claim, insofar as it involves the initial takedown, is barred by the favorable termination rule, also known as the Heck bar,

5

because Plaintiff lost time credits as a result of being found guilty in prison disciplinary proceedings;[3] (2) Plaintiff's claim fails on the merits, as it relates to the officers' alleged assault on the ground, because no reasonable jury could return a verdict in Plaintiff's favor; and (3) Defendants are entitled to qualified immunity.

### 1. Favorable Termination Rule as Bar to Claim Regarding Initial Takedown

#### a. Legal Standard

As a general matter, state prisoners may not challenge the fact or duration of their confinement in a section 1983 action and their sole remedy lies in habeas corpus relief. Wilkinson v. Dotson, 544 U.S. 74, 78, 125 S.Ct. 1242 (2005). Often referred to as the favorable termination rule or the Heck bar, this exception to section 1983's otherwise broad scope applies whenever state prisoners "seek to invalidate the duration of their confinement - either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody." Wilkinson, 544 U.S. at 81 (emphasis in original). Accordingly, "a state prisoner's [section] 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Id. at 81-2.

#### b. Credit Loss

The evidence submitted by Defendants demonstrates that Plaintiff forfeited 150 days in time credits as a result of being found guilty in prison disciplinary proceedings of battery on a peace officer. (ECF No. 99-5, Defs' Ex. B, p. 7.) Plaintiff admits that he was found guilty and assessed 150 days loss of good time credits. (ECF No. 109, Pl's Statement ¶9.)

Although Plaintiff does not dispute the credit loss, he argues that the Heck bar does not apply because he has not been convicted of battery in a court of law. (ECF No. 109, p. 10.) This argument is unavailing and does not create a factual dispute regarding the disposition imposed following his

---

[3] Heck v. Humphrey, 512 U.S. 477, 487-88, 114 S.Ct. 2364 (1994).

1   prison disciplinary hearing.  Contrary to Plaintiff's argument, the favorable termination rule applies to
2   prison disciplinary proceedings if those proceedings resulted in the loss of good-time or behavior
3   credits.  Edwards v. Balisok, 520 U.S. 641, 646-48, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997).

4         Plaintiff also argues that Defendants' arguments are irrelevant because he is not seeking to
5   restore a loss of good time credits and that Heck does not apply to the alleged assault "once Plaintiff
6   was slamed [sic] on the ground."  (ECF No. 109., P. 8.)  Plaintiff fails to recognize that Defendants
7   seek to apply the Heck bar solely to the initial takedown by Defendant Gonzales, not the alleged
8   assault.  Plaintiff's arguments to the contrary lack merit.

9         Therefore, Plaintiff's excessive force claim regarding the initial takedown is barred by the
10  favorable termination rule if a finding in his favor on his claim would necessarily imply the invalidity
11  of the resulting disciplinary conviction.  Wilkinson, 544 U.S. at 81-2; Edwards, 520 U.S at 646-48.

12          c.   Effect of a Finding in Plaintiff's Favor
13            i.   Plaintiff's Allegations

14  As noted above, Plaintiff alleges that Defendants Gonzales and Murrieta were escorting him
15  back to his cell from the law library.  (ECF No. 1, ¶¶ 7, 13.)  Defendant Gonzales began pulling on
16  Plaintiff's left arm, telling him to speed up and walk faster.  (ECF No. 1, ¶¶ 15, 16.)  Plaintiff's hands
17  were handcuffed behind his back and he was holding his legal mail.  When Plaintiff responded that he
18  could not go any faster and that he was losing his grip on an envelope he was holding, Defendant
19  Gonzales slammed Plaintiff to the ground with enough force that "Plaintiffs head was busted."  (ECF
20  No. 1, ¶¶ 15 17.)

21            ii.   Prison Disciplinary Hearing Findings

22  In contrast, in finding Plaintiff guilty of battery on a peace officer, the prison disciplinary
23  hearing officer's findings of fact were based on the preponderance of the following evidence:

24      1) Rules Violation Report [authored by Defendant Gonzales] states in part on 06-09-08,
         I gave JOHNSON a direct order to face forward and not to turn his shoulder.  It was
25       at this time JOHNSON turned towards me on the left side and twisted his upper body
         as if he was trying to break my grip and stepped towards me, hitting my chest area
26       with his chest, Keeping my grip on JOHNSON'S arm, I used JOHNSON'S
         momentum to attempt to put him on the ground.  As I turned towards my left, I
27       slipped on the gravel dirt and we went down to the ground.  While on the ground,
28       JOHNSON was wiggling his upper body and kicking his legs.

7

…

5) Investigative Report completed by Correctional Officer R. HEATHERLY. (ECF No. 99-5, Defs' Ex. B.)  The investigative report completed by Correctional Officer R. Heatherly also documented that Plaintiff turned towards Gonzales and bumped Gonzales with his chest.  (Id.)

### iii.   Court's Findings

To prevail on his excessive force claim regarding the initial takedown, Plaintiff must demonstrate that the force at issue was applied maliciously and sadistically to cause harm rather than in a good-faith effort to maintain or restore discipline.  Wilkins v. Gaddy, 559 U.S. 34, 37, 130 S.Ct. 1175, 1178 (2010) (per curiam) (quotation marks and citation omitted).  In determining whether the use of force was wanton and unnecessary, courts may evaluate the extent of the prisoner's injury, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.  Hudson v. McMillian, 503 U.S. 1, 7, 112 S.Ct. 995 (1992) (quotation marks and citations omitted).

A disciplinary conviction for battery on a peace officer is not necessarily inconsistent with a finding in the inmate's favor on an excessive force claim brought pursuant to section 1983 claim.  In other words, an excessive force claim following a disciplinary conviction is not Heck barred as a matter of course.  Whether a finding in favor of the inmate on his section 1983 claim will necessarily invalidate the disciplinary conviction is a fact-specific inquiry, and courts have reached different results depending upon the findings underlying the criminal or disciplinary conviction and the facts underlying the section 1983 claim.  See Smith v. City of Hemet, 394 F.3d 689, 697-98 (9th Cir. 2005) (excessive force claim was not Heck barred where the force occurred subsequent to the conduct upon which the conviction for willfully resisting, delaying or obstructing peace office in performance of duties was based); Cunningham v. Gates, 312 F.3d 1148, 1153-55 (9th Cir. 2002) (inmate's felony murder conviction Heck barred any civil claim that he did not provoke the incident at issue and barred his excessive force claim).

1     In Plaintiff's version of events, Defendant Gonzales' takedown was entirely unprovoked. In
2 Defendants' version of events, Plaintiff refused to follow a direct order, Plaintiff turned toward
3 Defendant Gonzales and twisted his upper body as if trying to break Defendant Gonzales' grip, and
4 Plaintiff then stepped towards Defendant Gonzales, hitting Defendant Gonzales' chest with his chest.
5 When Defendant Gonzales attempted to put Plaintiff on the ground, he slipped on the gravel and went
6 down to the ground.
7     Plaintiff's disciplinary conviction and his excessive force claim regarding the initial takedown
8 arise from the same incident, and the two versions of events are entirely inconsistent with one another.
9 If Plaintiff prevailed on his claim that Defendant Gonzales, unprovoked by Plaintiff and without any
10 justification, used excessive physical force against him and seriously injured him during the initial
11 takedown, his success would necessarily invalidate the result of the disciplinary hearing, which was
12 based on the finding that Plaintiff instigated the entire incident and battered Defendant Gonzales,
13 causing Defendant Gonzales to have to take him to the ground to regain control over him. Therefore,
14 the Court finds that Plaintiff's excessive force claim regarding the initial takedown is barred by the
15 favorable termination rule, and this portion of his claim must be dismissed. Heck, 512 U.S. at 489
16 (until and unless favorable termination of the conviction or sentence occurs prisoner has no cause of
17 action under section 1983).

18                    2.   Excessive Force Claim following Initial Takedown

19     Plaintiff alleges that after the initial takedown, he was struck by Defendants Gonzales and
20 Murrieta numerous times before losing consciousness. (ECF No. 1, ¶ 18.) When Plaintiff regained
21 consciousness, Correctional Officers Beltran and Blevins escorted him to the medical clinic for
22 treatment. (ECF No. 1, ¶ 20.)
23     Defendants argue that the quality and quantity of the evidence would not allow a reasonable
24 jury to return a verdict for Plaintiff relating to the alleged assault. In particular, Defendants assert that
25 the undisputed medical evidence demonstrates that Plaintiff sustained only minor injuries consistent
26 with the initial takedown, but entirely incompatible with Plaintiff's account of an assault causing him
27 to lose consciousness. (ECF No. 99-1, p. 8, Defs' Stmt. 20, 27-28; ECF No. 99-5, Defs' Ex. E.)
28

However, in excessive force cases, the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins, 559 U.S. at 3 (internal quotations omitted).   Plaintiff alleges that while on the ground and handcuffed, Defendants assaulted him to the point of unconsciousness without provocation.  (ECF No. 109, Pl's Dec. ¶¶ 3-4.) Plaintiff is therefore alleging that Defendants acted maliciously and sadistically, not in a good-faith effort to maintain or restore discipline.  Further, the medical evidence reflects an injury to Plaintiff's head, including scratches and abrasions, which provides at least some support for Plaintiff's allegations.  (ECF 99-5, Defs' Ex. E; ECF No. 109, Pl's Ex. A.) Although Defendants submit evidence from an eyewitness arriving on the scene who observed Plaintiff to be fully conscious (ECF No. 99-5, Defs' Ex. C), Plaintiff submits a counter affidavit from an eyewitness that saw two officers swinging their arms as if punching Plaintiff while he was lying on the ground (ECF No. 109, Pl's Ex. B, Madrid Aff.).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence.  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir.2007) (quotation marks and citation omitted).  Viewing the evidence and all inferences in the light most favorable to the non-moving party, the Court finds that Plaintiff has raised a genuine dispute of material fact regarding the alleged assault by Defendants Gonzales and Murrieta after the initial takedown.

        3.   Qualified Immunity

As a final matter, Defendants argue that they are entitled to qualified immunity.   In light of the findings above, the Court addresses this argument only with respect to that portion of the excessive force claim that survives summary judgment.

Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982).  "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when

they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 815 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096 (1986).

In resolving a claim of qualified immunity, courts must determine whether, taken in the light most favorable to the plaintiff, the defendants' conduct violated a constitutional right, and if so, whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001); Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009). While often beneficial to address in that order, courts have discretion to address the two-step inquiry in the order they deem most suitable under the circumstances. Pearson, 555 U.S. at 236, 129 S.Ct. at 818 (overruling holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); Mueller, 576 F.3d at 993-94.

Having determined that Plaintiff has raised a triable issue of fact as to whether there was a constitutional violation, the Court must determine whether the right was clearly established. "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 2515 (2002) (citation omitted). Official action is entitled to protection "unless the very action in question has previously been held unlawful." Hope, 536 U.S. at 739. "Specificity only requires that the unlawfulness be apparent under preexisting law," Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) (citation omitted), and prison personnel "can still be on notice that their conduct violates established law even in novel factual circumstances," Hope, 536 U.S. at 741. The salient question is whether the state of the law in June 2008 gave Defendants fair warning that their alleged treatment of Plaintiff was unconstitutional. Hope, 536 U.S. at 741 (quotation marks omitted).

By 2008, the prohibition against the use of excessive physical force was clearly established. Hudson, 503 U.S. at 6-7. Assuming the facts in the light most favorable to Plaintiff, no reasonable officer would have believed that striking a prone, handcuffed inmate to the point of unconsciousness was lawful. Accordingly, the Court finds that Defendants Gonzales and Murrieta are not entitled to qualified immunity.

///

**V.     Conclusion and Recommendation**

For the reasons stated, IT IS HEREBY RECOMMENDED that Defendants' motion for summary judgment, filed on November 15, 2013, be GRANTED IN PART and DENIED IN PART as follows:

1. Defendants' motion be GRANTED as to Plaintiff's excessive force claim against Defendant Gonzales arising out of the initial takedown on June 9, 2008, on the ground that Plaintiff's excessive force claim is barred by the favorable termination rule;
2. Plaintiff's excessive force claim arising out of the initial takedown by Defendant Gonzales be DISMISSED without prejudice;
3. Defendants' motion be DENIED as to Plaintiff's excessive force claim against Defendants Gonzales and Murrieta arising out of an alleged assault following the takedown on June 9, 2008;
4. Defendants' motion for qualified immunity be DENIED; and
5. This matter be set for jury trial on Plaintiff's Eighth Amendment excessive force claims against Defendants Gonzales and Murrieta arising out of an alleged assault following the takedown by Defendant Gonzales on June 9, 2008.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 11, 2014**                    /s/ Barbara A. McAuliffe
                                              UNITED STATES MAGISTRATE JUDGE